FILED - USDC -NH
2020 DEC 21 PM4:26

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| GEORGE KUIPER | ) |

No. 1:20-cr-\S8-PB-0\

### PLEA AGREEMENT

Pursuant to Rules 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the United States of America by its attorney, Scott W. Murray, United States Attorney for the District of New Hampshire, and the defendant, George Kuiper, and the defendant's attorneys, Colleen Savage, Esquire, and Tony Sgro, Esquire, enter into the following Plea Agreement:

1.  The Plea and the Offense.

The defendant agrees to waive his right to have this matter presented to a grand jury and plead guilty to an Information charging him with: in Count One, conspiracy to distribute unapproved drugs in interstate commerce and to smuggle goods into the United States in violation of Title 18, United States Code, Section 371 and 545, and Title 21, United States Code, Sections 331(d) & 333(a)(2); in Count Two, distributing unapproved drugs in interstate commerce in violation of Title 21, United States Code, Sections 331(d) & 333(a)(2); and Count Three, smuggling goods into the United States in violation of Title 18, United States Code, Section 545. In exchange for the defendant's guilty plea, the United States agrees to the sentencing stipulations identified in Section 6 of this agreement.

2.  The Statutes and Elements of the Offenses.

*Count One:*

- 1 -

Title 18, United States Code, Section 371 provides, in pertinent part, "[i]f two or more persons conspire ... to commit any offense against the United States ... and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both." The defendant understands that the offense has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

> First, that the agreement specified in the information, and not some other agreement or agreements, existed between two or more people to introduce into interstate commerce unapproved new drugs, in violation of 21 U.S.C. §§ 331(d) & 333(a)(2), or to smuggle goods into the United States, in violation of 18 U.S.C. § 545;

> Second, that the defendant knew the unlawful purpose of the plan and willfully joined in it; and

> Third, that one of the conspirators committed an overt act during the period of the conspiracy in an effort to further the purposes of the conspiracy.

*Pattern Criminal Jury Instructions for the District Courts of the First Circuit, District of Maine Internet Site Edition, 2019 Revisions,* Instruction 4.18.371(1). http://www.med.uscourts.gov/pdf/crpjilinks.pdf

*Count Two:*

Title 21, United States Code, Section 331(d), provides, in pertinent part, "[t]he introduction or delivery for introduction into interstate commerce of any [new drug not approved by the FDA]" is prohibited. Title 21, United States Code, Section 333(a)(2) provides, in relevant part, "if any person ... commits such a violation with the intent to defraud or mislead, such person shall be imprisoned for not more than three years ... ." The defendant understands that the elements of the offense of the introduction of an unapproved new drug into interstate commerce are:

> First, that the defendant introduced a product into interstate commerce;

- 2 -

Second, that the product was a drug within the meaning of 21 U.S.C. § 321(g)(1) because it was intended to cure, mitigate, treat, or prevent a disease or was intended to affect the structure or function of the body of man;

Third, that the drug was a new drug within the meaning of 21 U.S.C. § 321(p) because it was not generally recognized among qualified experts as safe and effective for the uses prescribed, recommended, or suggested on the labeling of the drug;

Fourth, that the drug was not approved by the United States Food and Drug Administration (21 U.S.C. §§ 331(d), 355(a)); and

Fifth, that the defendant acted with intent to defraud or mislead (21 U.S.C. § 333(a)(2)).

*Count Three:*

Title 18, United States Code, Section 545 makes it a crime for any person to fraudulently or knowingly import or bring into the United States any merchandise contrary to law. The defendant understands that the elements of the offense are:

First, that the defendant imported or brought into the United States any merchandise (specifically, controlled substances or unapproved new drugs);

Second, that the importation of the merchandise was contrary to law; and

Third, that the defendant knew the importation was contrary to law.

3. Offense Conduct.

The defendant stipulates and agrees that if this case proceeded to trial, the government would introduce evidence of the following facts, which would prove the elements of the offenses beyond a reasonable doubt:

From at least as early as 2006, and until June 2020, the defendant operated an internet pharmacy which he managed from his residence in Lawrenceville, Georgia. Although the websites he used changed over the years, the nature of his business did not. Defendant operated

- 3 -

the website nubrain.com until February 2015, when the registration for the website was revoked after FDA notified Web.com, the domain name registrar, that the website was selling products in violation of 21 U.S.C. § 331. Defendant immediately re-established his operations on a new website, healthclown.com. On his websites, nubrain.com and healthclown.com, the defendant sold over 100 products including prescription drugs and controlled substances. The defendant's best-selling product was modafinil, a Schedule IV controlled substance and prescription new drug. The version of modafinil the defendant sold was not approved by the FDA. None of the defendant's websites were ever registered with the DEA to distribute, or handle in the course of being distributed, controlled substances.

On at least the following occasions from 2009 to 2020, Food and Drug Administration Office of Criminal Investigations ("FDA-OCI") agents conducted controlled purchases of unapproved modafinil (and sometimes other prescription drugs) from the defendant's websites:

| DATE | WEBSITE |
|---|---|
| April 29, 2009 | Nubrain.com |
| June 25, 2009 | Nubrain.com |
| October 9, 2009 | Nubrain.com |
| May 9, 2012 | Nubrain.com |
| November 4, 2013 | Nubrain.com |
| November 11, 2016 | Healthclown.com |
| September 12, 2019 | Healthclown.com |
| April 9, 2020 | Healthclown.com |

- 4 -

The purchases never required a prescription, no medical questionnaire was administered, and no consultation with a medical practitioner ever occurred. On most occasions, the drugs were either received directly from shippers in foreign countries or had packaging indicating that they were manufactured in foreign countries. On each occasion, the drugs were sent to FDA-OCI agents in New Hampshire.

For example, on or about April 9, 2020, agents accessed Healthclown.com and ordered 120 200mg Modalert tablets, among other products. Modalert is a product that contains modafinil and is not approved by the FDA. No prescription or medical questionnaire was required, and no consultation with a medical practitioner occurred prior to or after placing the order. Agents paid with a postal money order which was sent to Nubrain at a P.O. Box in Grayson, Georgia. The money order was signed and cashed by the defendant.

On or about April 15, 2020, agents received an email from the defendant informing them that the order would ship within 2-3 weeks. On that same date agents responded to the email and stated "2-3 weeks for shipping? You've never taken this long in the past." Shortly after sending the email agents receive a response from the defendant stating, "ALL ORDERS ARRIVE FROM OVERSEAS the suppliers have shut down for the past month we will keep you updated." On May 15, 2020, agents received another email saying, "as soon as shipper resumes we will let you know the problem is the flights leaving INDIA beyond control of supplier we are looking at another option." Agents eventually received the modafinil in packaging that read, "Manufactured by sun pharma laboratories, ltd, Kamrup." Kamrup is a location in India.

Investigators executed search warrants for email accounts used by the defendant which made clear that he controlled all aspects of his online pharmacy business. He regularly

- 5 -

communicated with customers, and drug suppliers in India, Australia, and the United Kingdom among other countries. Various emails from customers indicate that drugs were regularly seized by customs, or other law enforcement agencies. In response to one email, the defendant responded, "about 5% of orders are seized we will replace the product from Atlanta as soon as we receive product." On March 24, 2020, a different customer emailed the defendant saying, "well it's official I got a notification from customs that I need to register with the DEA or they're going to destroy the products." The defendant responded, "please discard the letter. Will replace next week." The emails also made clear that the defendant employed others, including his family members, to operate his business.

Investigators also executed a search warrant on a server which hosted the defendant's websites. One database file maintained on the server listed drug sales totaling approximately $2.6 million for the time period 2006 through 2012. Of the $2.6 million in sales, almost $1.2 million were for sales of Modafinil. A second database file, entitled "Nubrain New," listed approximately $1.2 million in sales from 2012 through 2015, including sales from both the Nubrain.com and Healthclown.com websites. Of the $1.2 million in sales, approximately $875,000 were for sales of Modafinil.

On June 24, 2020, agents executed a search warrant at the defendant's residence and interviewed the defendant. The defendant admitted that he operated the websites and that he knew it was illegal to sell modafinil without a prescription. He also admitted to shipping modafinil to customers directly from overseas suppliers.

4.  Penalties, Special Assessment and Restitution.

The defendant understands that the penalties for the offense charged in Count One of the

Information are:

    A.     A maximum prison term of five years (18 U.S.C. § 371);

    B.     A maximum fine of $250,000, or in the alternative not more than the greater of twice the gross gain or twice the gross loss (18 U.S.C. § 3571(b)(3) & (d)); and

    C.     A term of supervised release not more than three years (18 U.S.C. § 3583(b)(2). The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release.

The defendant understands that the penalties for the offense charged in Count Two of the

Information are:

    A.     A maximum prison term of three years (21 U.S.C. § 333(a)(2));

    B.     A maximum fine of $250,000, or in the alternative not more than the greater of twice the gross gain or twice the gross loss (18 U.S.C. § 3571(b)(3) & (d)); and

    C.     A term of supervised release of not more than one year (18 U.S.C. § 3583(b)(3)). The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release.

The defendant understands that the penalties for the offense charged in Count Three of

the Information are:

    A.     A maximum prison term of twenty years (18 U.S.C. § 545)

    B.     A maximum fine of $250,000, or in the alternative not more than the greater of twice the gross gain or twice the gross loss (18 U.S.C. § 3571(b)(3) & (d)); and

    C.     A term of supervised release of not more than five years (18 U.S.C. § 3583(b)(1)). The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already

- 7 -

spent on supervised release

The defendant understands that a mandatory special assessment of $300, $100 for each count of conviction, is due at or before the time of sentencing (18 U.S.C. § 3013(a)(2)(A)).   In addition to the other penalties provided by law, the Court may order him to pay restitution to the victim(s) of the offense (18 U.S.C. § 3663 or § 3663A).

5.   <u>Sentencing and Application of the Sentencing Guidelines.</u>

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that he has no right to withdraw from this Plea Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation Office shall:

A.   Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B.   Respond to questions from the Court;

C.   Correct any inaccuracies in the pre-sentence report;

D.   Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory

- 8 -

Sentencing Guidelines that the Court will adopt.

    6. <u>Non-Binding Sentencing Stipulations and Agreements</u>.

    Pursuant to Fed. R. Crim. 11(c)(1)(C), the United States and the defendant stipulate and agree that five years' probation is an appropriate disposition of this case.

    The parties intend the above stipulation to be "binding" under Fed. R. Crim. P. 11(c)(1)(C). By using the word binding the parties mean that if the Court will not accept the plea agreement under Fed. R. Crim. P. 11(c)(3)(A), the plea agreement is null and void and the defendant will be allowed the opportunity to withdraw his guilty pleas.

    The United States and the defendant are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

    7.  <u>Acceptance of Responsibility</u>.

    The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

      A.     Fails to admit a complete factual basis for the plea at the time he is
             sentenced or at any other time;

      B.     Challenges the United States' offer of proof at any time after the plea is
             entered;

- 9 -

C.      Denies involvement in the offense;

D.      Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E.      Fails to give complete and accurate information about his financial status to the Probation Office;

F.      Obstructs or attempts to obstruct justice, prior to sentencing;

G.      Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H.      Fails to appear in court as required;

I.      After signing this Plea Agreement, engages in additional criminal conduct; or

J.      Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

- 10 -

8.   <u>Waiver of Trial Rights and Consequences of Plea.</u>

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.   The defendant also understands that he has the right:

A.      To plead not guilty or to maintain that plea if it has already been made;

B.      To be tried by a jury and, at that trial, to the assistance of counsel;

C.      To confront and cross-examine witnesses;

D.      Not to be compelled to provide testimony that may incriminate him; and

E.      To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of the his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

9.   <u>Acknowledgment of Guilt; Voluntariness of Plea.</u>

The defendant understands and acknowledges that he:

A.      Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B.      Is entering into this Plea Agreement without reliance upon any promise or benefit of any kind except as set forth in this Plea Agreement or revealed to the Court;

C.      Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D.     Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E.     Is completely satisfied with the representation and advice received from his undersigned attorney.

10.   <u>Scope of Agreement</u>.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea. The defendant understands such matters are solely within the discretion of the specific non-party government agency involved. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11.   <u>Collateral Consequences</u>.

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

The defendant understands that, if he is not a citizen of the United States, his guilty plea to the charged offense will likely result in him being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible. The defendant also understands that if he is a naturalized citizen, his guilty plea may result in ending his naturalization, which would likely subject him to immigration proceedings and possible removal from the United States. The defendant understands that the immigration consequences

- 12 -

of this plea will be imposed in a separate proceeding before the immigration authorities. The

defendant wants and agrees to plead guilty to the charged offense regardless of any immigration

consequences of this plea, even if this plea will cause his removal from the United States. The

defendant understands that he is bound by his guilty plea regardless of any immigration

consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty

plea and to his sentence based on any immigration consequences, and agrees not to seek to

withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his

guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

      12.   <u>Satisfaction of Federal Criminal Liability; Breach</u>.

      The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal

liability in the District of New Hampshire arising from his participation in the conduct that forms

the basis of the Information in this case. The defendant understands that if, before sentencing, he

violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails

to appear for sentencing, the United States may consider such conduct to be a breach of the Plea

Agreement and may withdraw therefrom.

      13.   <u>Forfeiture</u>

      The defendant further agrees:

      That he will immediately and voluntarily forfeit to the United States his interest, if any, in

any and all assets subject to forfeiture pursuant to 18 U.S.C. § 545, 982(a)(2)(B), and 21 U.S.C.

§ 334, as a result of his guilty plea, including, but not limited to: (A) $19,120.14 in funds from

Citibank Account #145922044; (B) $2,452.00 in U.S. Currency; (C) $11,090.49 in funds from

Fidelity Bank Account #140907596; (D) $67,028.22 in funds from Renasant Account #1102435;

(E) $21,527.31 in funds from Renasant Account #3417190; (F) $108,956.13 in funds from TD Ameritrade Account #756471881; and (G) $19,545.11 in funds from TD Ameritrade Bank Account #862721260;

That the Court may enter an order of forfeiture with respect to (A) through (G) at or before sentencing;

That he will not contest any civil judicial forfeiture of (H) Land and Buildings located at 1576 Creek Bend Lane, Lawrenceville, GA and (I) Land and Buildings located at 2775 Old Shackleford Road, Suite 1001, Lawrenceville, GA. *See* Complaint, *United States v. 333 Summit Ridge Road, Lawrenceville, GA,* Civil No. 20-721-LM, ECF No. 1; and

That he will pay the amount of $200,000.00 as a substitute res for (J) Land and Buildings located at 333 Summit Ridge Drive, Lawrenceville, GA. Payment of the substitute res shall be due on or before the date of sentencing. Upon payment of the substitute res, the United States will dismiss (J) from the civil forfeiture action, and file an assented-to motion for an order of forfeiture for the substitute res of $200,000.00, (H), and (I).

The defendant agrees that he will not submit a claim and/or petition for remission for assets (A) though (J) on behalf of himself or any other person, and agrees to withdraw any claims and/or petitions for remission for assets (A) though (J) that have been filed on behalf of himself or any other person; to take whatever steps are necessary to pass to the United States clear title to (H) and (I), above, including, without limitation, to assent to a motion for a final order of forfeiture and to complete any other legal documents required for the transfer of title to the United States; not to assist any other individual in any effort to falsely contest the forfeiture of the forfeitable properties (A) through (J); to prevent the transfer, sale, destruction, or loss of the

- 14 -

forfeitable properties to the extent defendant has the ability to do so.

None of the forfeitures set forth in this section shall be deemed to satisfy or offset any fine, restitution, cost of imprisonment, or other penalty imposed upon the defendant, nor shall the forfeitures be used to offset the defendant's tax liability or any other debt owed by the defendant to the United States.

With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (A) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment; (B) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (C) all constitutional, legal, and equitable defenses to the forfeiture of assets (A) through (G), described in paragraph 1, in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment. Defendant acknowledges that the forfeiture of assets (A) through (G) is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

Defendant understands that the forfeiture of assets is part of the sentence that may be imposed in this case.

Defendant agrees to waive and release any and all claims he may have to any property seized by the United States, or any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, whether forfeited or not.

- 15 -

The defendant agrees to hold the United States, its agents, and employees, and any state or local law enforcement agency participating in the investigation and prosecution of this case, harmless from any claims whatsoever in connection with the seizure and forfeiture, as well as the seizure, detention and return of any property in connection with the investigation and prosecution of this case.

The defendant acknowledges that the properties to be forfeited under this section are subject to forfeiture as property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the said violations.

14. <u>Waivers</u>.

A.  Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1.   His guilty plea and any other aspect of his conviction, including, but not
     limited to, adverse rulings on pretrial suppression motion(s) or any other
     adverse disposition of pretrial motions or issues, or claims challenging the
     constitutionality of the statute of conviction; and

2.   The sentence imposed by the Court if it is consistent with or lower than
     the stipulations specified in Section 6 of this agreement.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B.  Collateral Review

The defendant understands that he may have the right to challenge his guilty plea and/or

- 16 -

sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255.   By

entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to

collaterally challenge:

1.     His guilty plea, except as provided below, and any other aspect of his
       conviction, including, but not limited to, adverse rulings on pretrial
       suppression motion(s) or any other adverse disposition of pretrial motions
       or issues, or claims challenging the constitutionality of the statute of
       conviction; and

2.     The sentence imposed by the Court if it is consistent with or lower than
       the stipulations specified in Section 6 of this agreement.

The defendant's waiver of his right to collateral review does not operate to waive a

collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on

the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral

review also does not operate to waive a collateral challenge based on new legal principles

enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea

Agreement that have retroactive effect.

C. Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a

representative, to request or receive from any department or agency of the United States any

records pertaining to the investigation or prosecution of the case(s) underlying this Plea

Agreement, including without limitation any records that may be sought under the Freedom of

Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D. Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the

Government pursuant 18 U.S.C. § 3742(b) to pursue an appeal as authorized by law.

- 17 -

15. <u>No Other Promises</u>.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

16. <u>Final Binding Agreement</u>.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

17. <u>Agreement Provisions Not Severable</u>.

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

SCOTT W. MURRAY
United States Attorney

Date: 12/21/2020

By: _____
Georgiana L. MacDonald
Assistant United States Attorney
MA Bar No. 685375
53 Pleasant St., 4th Floor
Concord, NH 03301
Georgiana.macdonald@usdoj.gov

_____
Sarah Hawkins
Special Assistant U.S Attorney

- 18 -

The defendant, George Kuiper, certifies that he has read this 18-page Plea Agreement and that he fully understands and accepts its terms.

Date: 12/17/20

George Kuiper, Defendant

I have read and explained this 18-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: 12/17/20

Colleen Savage, Esquire
Attorney for George Kuiper

Date: 12/17/20

Tony Sgro, Esquire
Attorney for George Kuiper

- 19 -