UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) Crim No. 1:20-cr-00158-PB |
| | ) |
| v. | ) Civil No. 1:20-cv-721-LM |
| | ) |
| | ) |
| GEORGE KUIPER | ) |
| | ) |

## DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW, the Defendant, George Kuiper, by and through his attorneys of record, Anthony P. Sgro, Esq., and Colleen N. Savage, Esq., of the law firm of SGRO & ROGER, and hereby submit this Sentencing Memorandum.

This Memorandum is made and based upon all of the papers and pleadings on file herein, the attached Statement of the Case, Memorandum of Law, as well as any oral argument made at the time of sentencing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction

#### A.  Statement of the Case

On December 21, 2020, George Kuiper (hereinafter "Mr. Kuiper") was charged by way of Information with three drug related offenses. These charges stem from the online sale of substances, primarily Modafinil. Modafinil is approved by the United States Food and Drug Administration and safe to take with a prescription.[1] Modafinil, otherwise known as Provigil[2] is

---

[1] Modafinil is the generic name for the prescription drug, Provigil.
[2] https://www.accessdata.fda.gov/drugsatfda_docs/label/2015/020717s037s038lbl.pdf

used to treat problems such as narcolepsy, sleep apnea, and shift work sleep disorder.[3] Modafinial is currently classified as a Schedule IV controlled substance pursuant to United States federal law.

On January 14, 2021, Mr. Kuiper plead guilty to the charges included in the Information. The Honorable Judge Barbadoro accepted Mr. Kuiper's guilty plea to Count One, Conspiracy to Distribute Unapproved Drugs in Interstate Commerce and to Smuggle Goods into the United States; Count Two, Distributing Unapproved Drugs in Interstate Commerce; and Count Three, Smuggling Goods into the United States.

**Pursuant to the plea agreement, the parties stipulate and agree that five (5) years of probation is an appropriate sentence for the disposition of this case.[4]** The negotiated plea and stipulated settlement agreement[5] contemplate that Mr. Kuiper will serve no incarceration time given his cooperation and extensive voluntary forfeiture of various funds and assets. The Plea Agreement is intended to be binding under Fed. R. Crim. P. 11(c)(1)(C).[6] Mr. Kuiper's guilty plea, which has been accepted by this Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the Information in this case.[7]

### B. Pre-Trial Services Report

On January 12, 2021, Jacqulyne Santullo, a U.S. Probation Officer submitted her Pre-Trial Services Report.[8] This report was reviewed and approved by Janice A. Bernard, a U.S. Probation Officer Specialist.

---

[3]  https://www.accessdata.fda.gov/drugsatfda_docs/label/2015/020717s037s038lbl.pdf
[4]  See page 9 of Plea Agreement attached hereto as Exhibit "1".
[5]  See Stipulated Settlement Agreement attached hereto as Exhibit "2".
[6]  See Plea Agreement attached hereto as Exhibit "1".
[7]  See page 13 of Plea Agreement attached hereto as Exhibit "1".
[8]  Pre-Trial Services Report attached hereto as Exhibit "3".

After a careful overview, Officer Santullo concluded the following with regard to her assessment of Mr. Kuiper: Mr. Kuiper **"[did] not present a risk of nonappearance or danger to the community; therefore, the probation officer respectfully recommends that the defendant be released or on personal recognizance without pretrial supervision.**" This recommendation is well supported by the examination of all relevant domains such as Mr. Kuiper's physical health, mental health, his education, his family and social relationships, and attitude.

### C. Mr. Kuiper's Background and Present Circumstances

Mr. Kuiper is seventy-three (73) years old. He was born in New York City, NY and raised in New Jersey until the age of eighteen (18). Mr. Kuiper is an educated man. He has studied a variety of college subjects including architecture and engineering at two different schools: Miami Dade Community College and the New Jersey Institute. Mr. Kuiper eventually graduated with a bachelor's degree in marketing from the University of Colorado in 1977. Mr. Kuiper is divorced and has two adult children.

From 1983-2003, Mr. Kuiper was gainfully employed as a sales representative for various vitamin companies including Key Products, Crystal Start Nutrition, YSK Products, Sunbrella, Life Link, and Unique Nutrition. During his tenure with these companies, Mr. Kuiper became intrigued with health and science.

Mr. Kuiper has been retired for the past 16 years. He currently resides in his home located in Lawrenceville, Georgia, where he has lived for over thirty (30) years. Mr. Kuiper lives a modest lifestyle, surviving primarily off of his Social Security Income. He does not own a vehicle, and walks to the grocery store approximately once a week for necessities.

3

Mr. Kuiper suffers from asthma, high blood pressure, high cholesterol and shortness of breath. Several years ago, Mr. Kuiper experienced a herniated disk and has lived with severe pain in his back and legs since that time. Mr. Kuiper has been diagnosed with manic depressive disorder and suffers from paranoia and anxiety. He is currently not taking any medication, although he has recently met with a psychologist, Dr. Emily Garai to address his mental health. Mr. Kuiper has made his mental health his number one priority and intends on continuing to work with Dr. Emily Garai and a psychiatrist to address and overcome his mental health issues while on probation.

Mr. Kuiper has been a law abiding citizen for nearly his entire life. Mr. Kuiper has a limited criminal record for minor offenses that occurred in 1969 and 1970 related to marijuana use in his early twenties. Since then, Mr. Kuiper has not had any substance abuse issues, nor does he drink alcohol.

### D. Cooperation with the Government and Acceptance of Responsibility.

At the outset, Mr. Kuiper has been cooperative with all investigation. Mr. Kuiper executed a proffer agreement,[9] wherein he agreed to provide information concerning his knowledge of violations of federal criminal law in an effort to assist the government.  Mr. Kuiper has done everything he can to aid the government and has worked diligently to provide the US Attorney's Office with all information he has. Importantly here, Mr. Kuiper's case did not include any violence or threats of violence, nor were any weapons at issue. Such a factor must be considered by this Court in determining a punishment that is fair to the crime.

Mr. Kuiper now stands before this Court totally and completely remorseful for his conduct. He does not seek to excuse or minimize the illegality of his actions.

---

[9] Proffer letter attached hereto as Exhibit "4".

### E.  Forfeiture of Assets

In consideration for this agreement, Mr., Kuiper agrees to immediately and voluntarily forfeit to the United Stated his interest in any and all assets subject to forfeiture including:

(A) $19,120.14 in funds from Citibank Account #████████;

(B) $2,452.00 in U.S. Currency;

€ $11,090.49 in funds from Fidelity Bank Account #████████;

(D) $67,028.22 in funds from Renasant Account #████████;

€ $21,527.31 in funds from Renasant Account #████████;

(F) $108,956.13 in funds from TD Ameritrade Account #████████; and

(G) $19,545.11 in funds from TD Ameritrade Bank Account #████████.

In addition, Mr. Kuiper agrees to pay the sum of $200,000.00 as a substitute res for defendant *in rem,* 333 Summit Ridge Drive, Lawrenceville, GA. The United States will then move to substitute $200,000.00 for 333 Summit Ridge Drive, Lawrenceville, GA and to dismiss 333 Summit Ridge Drive, Lawrenceville, GA from the case so that Mr. Kuiper may continue to use this property as his personal residence while on probation. Further, Mr. Kuiper consents to the forfeiture of all of his right, title and interest, in the land and buildings located at 2775 Old Shackleford Road, Suite 1001, Lawrenceville, GA, with all appurtenances and improvements thereon, in addition to the land and buildings located at 1576 Creek Bend Lane, Lawrenceville, GA, with all appurtenances and improvements thereon.

## II.   <u>Arguments for Sentencing Leniency</u>

### A.  Cost of a Lengthy Sentence on Taxpayers

It is appropriate for a court to consider the cost of incarceration on the taxpayers when the court has discretion in determining a defendant's sentence. In *United States v. Hughes*, 825 F.Supp. 866 (1993), the Court held:

The court cannot see the social utility in forcing this young man, with substantial prospects for becoming a productive member of society, to serve such a lengthy prison sentence. The foreseeable costs to society of this incarceration are at least two-fold. First, such lengthy incarceration substantially diminishes the likelihood that the defendant will be able to become a productive member of society upon his release. Second, the monetary cost to the American taxpayer of this incarceration will [be excessive]. Further, the non-rehabilitation purposes of incarceration--retribution, deterrence and incapacitation--would all be more than adequately served by a far shorter sentence. Both society and the defendant will pay a dear cost for [a greater] sentence and receive very little in return.

Moreover, it is crucial for the legitimacy of the judicial system that sentences are based on sound logic and are related to classic theories of punishment. The *res gestae* of this case supports the notion that this Court should sentence Mr. Kuiper to five years of probation with no incarceration as stipulated to by the United States.

Mr. Kuiper has been a productive member of society his entire life. He has maintained consistent employment throughout the years in the Lawrenceville community and has lived at the same address for over thirty (30) years. Mr. Kuiper has taken full responsibility for his actions and is eager to prove to this Court that he is capable of in society as a healthy and productive citizen.

### B. Impact of Covid-19

Throughout the United States, courts have elected to release non-violent offenders to help prevent the spread of COVID-1 9 among incarcerated persons, given that social distancing inside of prisons and jails is nearly impossible. Courts are now, more than ever ordering individuals to carry out the terms of their imprisonment on probation or house arrest due to concerns for the current health crisis.

Jails and prisons house large numbers of people with chronic diseases and complex medical needs who are more vulnerable to COVID-19. One of the best ways to protect these people is to reduce overcrowding in correctional facilities, and facilities nationwide are taking measures to keep their staff and inmate population safe.

Adhering to the plea agreement and allowing Mr. Kuiper to serve his term of probation sentence would serve the needs of justice, particularly for a seventy-four (74) year old defendant.

## C. Family and Community Letters in Support of Plea for Leniency

Mr. Kuiper's family members and close family friends have provided letters in support of Mr. Kuiper asking this Honorable Court to have leniency and follow the terms set forth within the plea agreement and accepted onto the record by the Honorable Judge Barbadoro.[10] The letters speak to Mr. Kuiper's character as a kind and selfless person. He is referenced throughout the letters as a hard-worker, and many of the letters reference the fact that the conduct in the instant offense is not something that appertains to Mr. Kuiper.

For example, Giles Galahad submitted a reference letter on behalf of Mr. Kuiper describing him as "hardworking and honest". Mr. Galahad stated he is aware of Mr. Kuiper's current legal problem which he views as completely non-representative of his character. In another letter, Gustavo Martin wrote that George has always displayed a high degree of integrity, responsibility, and friendship. Within these reference letters, it is clear that the people who know Mr. Kuiper well, still carry him in high regard.

## III.   Sentence Recommendation

There are number of considerations implicated in the instant matter that warrant the mitigated sentence contained within the stipulated plea agreement. Upon careful consideration of all the facts of this case, Mr. Kuiper asks this Honorable Court to sentence him to five years of probation with no incarceration as stipulated to by the United States.


/ / /

---

[10] Reference letters attached hereto as Exhibit "5".

## IV.    Conclusion

WHEREFORE, Mr. Kuiper submits that a sentence of five (5) years of probation fully serves the interests of justice in this matter. This sentence would be appropriate in light of the facts and circumstances of the offense, and Mr. Kuiper's age and health.

Respectfully submitted,

By his Attorneys,
Sgro & Roger

DATED this ___17___ day of __May__, 2021.

Anthony P. Sgro, Esq., NV Bar #3811
Colleen N. Savage, Esq. NV Bar #14947
SGRO & ROGER
720 S. 7th Street, Third Floor,
Las Vegas, NV 89101
Telephone: (702) 384-9800
Fax: (702) – 665-4120
tsgro@sgroandroger.com
csavage@sgroandroger.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this <u>17th</u> day of <u>May</u>, 2021, a copy of this **<u>DEFENDANT'S</u>**

**<u>SENTENCING MEMORANDUM</u>** was filed through the ECF system and will be sent

electronically to:

SCOTT W. MURRAY, United States Attorney
GEORGIANA MACDONALD
Assistant U.S. Attorney
ROBERT J. RABUCK
Assistant U.S. Attorney
District of New Hampshire
53 Pleasant Street
Concord, New Hampshire
603-225-1552
Rob.rabuck@usdoj.gov
georgiana.macdonald@usdoj.gov

An employee of Sgro & Roger

# EXHIBIT 1

# EXHIBIT 1

FILED - USDC -NH
2020 DEC 21 PM 4:26

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:20-cr-158-PB-01 |
| | ) | |
| GEORGE KUIPER | ) | |

## PLEA AGREEMENT

Pursuant to Rules 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the United

States of America by its attorney, Scott W. Murray, United States Attorney for the District of

New Hampshire, and the defendant, George Kuiper, and the defendant's attorneys, Colleen

Savage, Esquire, and Tony Sgro, Esquire, enter into the following Plea Agreement:

1.  The Plea and the Offense.

The defendant agrees to waive his right to have this matter presented to a grand jury and

plead guilty to an Information charging him with: in Count One, conspiracy to distribute

unapproved drugs in interstate commerce and to smuggle goods into the United States in

violation of Title 18, United States Code, Section 371 and 545, and Title 21, United States Code,

Sections 331(d) & 333(a)(2); in Count Two, distributing unapproved drugs in interstate

commerce in violation of Title 21, United States Code, Sections 331(d) & 333(a)(2); and Count

Three, smuggling goods into the United States in violation of Title 18, United States Code,

Section 545. In exchange for the defendant's guilty plea, the United States agrees to the

sentencing stipulations identified in Section 6 of this agreement.

2.  The Statutes and Elements of the Offenses.

*Count One:*

- 1 -

Title 18, United States Code, Section 371 provides, in pertinent part, "[i]f two or more

persons conspire … to commit any offense against the United States … and one or more of such

persons do any act to effect the object of the conspiracy, each shall be fined under this title or

imprisoned not more than five years, or both." The defendant understands that the offense has

the following elements, each of which the United States would be required to prove beyond a

reasonable doubt at trial:

> First, that the agreement specified in the information, and not some other agreement or
> agreements, existed between two or more people to introduce into interstate commerce
> unapproved new drugs, in violation of 21 U.S.C. §§ 331(d) & 333(a)(2), or to smuggle
> goods into the United States, in violation of 18 U.S.C. § 545;
>
> Second, that the defendant knew the unlawful purpose of the plan and willfully joined in
> it; and
>
> Third, that one of the conspirators committed an overt act during the period of the
> conspiracy in an effort to further the purposes of the conspiracy.

*Pattern Criminal Jury Instructions for the District Courts of the First Circuit, District of Maine
Internet Site Edition, 2019 Revisions,* Instruction 4.18.371(1).
http://www.med.uscourts.gov/pdf/crpjilinks.pdf

> *Count Two:*

Title 21, United States Code, Section 331(d), provides, in pertinent part, "[t]he

introduction or delivery for introduction into interstate commerce of any [new drug not approved

by the FDA]" is prohibited. Title 21, United States Code, Section 333(a)(2) provides, in relevant

part, "if any person … commits such a violation with the intent to defraud or mislead, such

person shall be imprisoned for not more than three years … ." The defendant understands that

the elements of the offense of the introduction of an unapproved new drug into interstate

commerce are:

> First, that the defendant introduced a product into interstate commerce;

Second, that the product was a drug within the meaning of 21 U.S.C. § 321(g)(1) because it was intended to cure, mitigate, treat, or prevent a disease or was intended to affect the structure or function of the body of man;

Third, that the drug was a new drug within the meaning of 21 U.S.C. § 321(p) because it was not generally recognized among qualified experts as safe and effective for the uses prescribed, recommended, or suggested on the labeling of the drug;

Fourth, that the drug was not approved by the United States Food and Drug Administration (21 U.S.C. §§ 331(d), 355(a)); and

Fifth, that the defendant acted with intent to defraud or mislead (21 U.S.C. § 333(a)(2)).

*Count Three:*

Title 18, United States Code, Section 545 makes it a crime for any person to fraudulently or knowingly import or bring into the United States any merchandise contrary to law. The defendant understands that the elements of the offense are:

First, that the defendant imported or brought into the United States any merchandise (specifically, controlled substances or unapproved new drugs);

Second, that the importation of the merchandise was contrary to law; and

Third, that the defendant knew the importation was contrary to law.

3. Offense Conduct.

The defendant stipulates and agrees that if this case proceeded to trial, the government would introduce evidence of the following facts, which would prove the elements of the offenses beyond a reasonable doubt:

From at least as early as 2006, and until June 2020, the defendant operated an internet pharmacy which he managed from his residence in Lawrenceville, Georgia. Although the websites he used changed over the years, the nature of his business did not. Defendant operated

the website nubrain.com until February 2015, when the registration for the website was revoked

after FDA notified Web.com, the domain name registrar, that the website was selling products in

violation of 21 U.S.C. § 331. Defendant immediately re-established his operations on a new

website, healthclown.com. On his websites, nubrain.com and healthclown.com, the defendant

sold over 100 products including prescription drugs and controlled substances. The defendant's

best-selling product was modafinil, a Schedule IV controlled substance and prescription new

drug. The version of modafinil the defendant sold was not approved by the FDA. None of the

defendant's websites were ever registered with the DEA to distribute, or handle in the course of

being distributed, controlled substances.

On at least the following occasions from 2009 to 2020, Food and Drug Administration

Office of Criminal Investigations ("FDA-OCI") agents conducted controlled purchases of

unapproved modafinil (and sometimes other prescription drugs) from the defendant's websites:

| DATE | WEBSITE |
| --- | --- |
| April 29, 2009 | Nubrain.com |
| June 25, 2009 | Nubrain.com |
| October 9, 2009 | Nubrain.com |
| May 9, 2012 | Nubrain.com |
| November 4, 2013 | Nubrain.com |
| November 11, 2016 | Healthclown.com |
| September 12, 2019 | Healthclown.com |
| April 9, 2020 | Healthclown.com |

- 4 -

The purchases never required a prescription, no medical questionnaire was administered, and no consultation with a medical practitioner ever occurred. On most occasions, the drugs were either received directly from shippers in foreign countries or had packaging indicating that they were manufactured in foreign countries. On each occasion, the drugs were sent to FDA-OCI agents in New Hampshire.

For example, on or about April 9, 2020, agents accessed Healthclown.com and ordered 120 200mg Modalert tablets, among other products. Modalert is a product that contains modafinil and is not approved by the FDA. No prescription or medical questionnaire was required, and no consultation with a medical practitioner occurred prior to or after placing the order. Agents paid with a postal money order which was sent to Nubrain at a P.O. Box in Grayson, Georgia. The money order was signed and cashed by the defendant.

On or about April 15, 2020, agents received an email from the defendant informing them that the order would ship within 2-3 weeks. On that same date agents responded to the email and stated "2-3 weeks for shipping? You've never taken this long in the past." Shortly after sending the email agents receive a response from the defendant stating, "ALL ORDERS ARRIVE FROM OVERSEAS the suppliers have shut down for the past month we will keep you updated." On May 15, 2020, agents received another email saying, "as soon as shipper resumes we will let you know the problem is the flights leaving INDIA beyond control of supplier we are looking at another option." Agents eventually received the modafinil in packaging that read, "Manufactured by sun pharma laboratories, ltd, Kamrup." Kamrup is a location in India.

Investigators executed search warrants for email accounts used by the defendant which made clear that he controlled all aspects of his online pharmacy business. He regularly

- 5 -

communicated with customers, and drug suppliers in India, Australia, and the United Kingdom among other countries. Various emails from customers indicate that drugs were regularly seized by customs, or other law enforcement agencies. In response to one email, the defendant responded, "about 5% of orders are seized we will replace the product from Atlanta as soon as we receive product." On March 24, 2020, a different customer emailed the defendant saying, "well it's official I got a notification from customs that I need to register with the DEA or they're going to destroy the products." The defendant responded, "please discard the letter. Will replace next week." The emails also made clear that the defendant employed others, including his family members, to operate his business.

Investigators also executed a search warrant on a server which hosted the defendant's websites. One database file maintained on the server listed drug sales totaling approximately $2.6 million for the time period 2006 through 2012. Of the $2.6 million in sales, almost $1.2 million were for sales of Modafinil. A second database file, entitled "Nubrain Now," listed approximately $1.2 million in sales from 2012 through 2015, including sales from both the Nubrain.com and Healthclown.com websites. Of the $1.2 million in sales, approximately $875,000 were for sales of Modafinil.

On June 24, 2020, agents executed a search warrant at the defendant's residence and interviewed the defendant. The defendant admitted that he operated the websites and that he knew it was illegal to sell modafinil without a prescription. He also admitted to shipping modafinil to customers directly from overseas suppliers.

4.  Penalties, Special Assessment and Restitution.

The defendant understands that the penalties for the offense charged in Count One of the

Information are:

    A.    A maximum prison term of five years (18 U.S.C. § 371);

    B.    A maximum fine of $250,000, or in the alternative not more than the greater of twice the gross gain or twice the gross loss (18 U.S.C. § 3571(b)(3) & (d)); and

    C.    A term of supervised release not more than three years (18 U.S.C. § 3583(b)(2). The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release.

The defendant understands that the penalties for the offense charged in Count Two of the

Information are:

    A.    A maximum prison term of three years (21 U.S.C. § 333(a)(2));

    B.    A maximum fine of $250,000, or in the alternative not more than the greater of twice the gross gain or twice the gross loss (18 U.S.C. § 3571(b)(3) & (d)); and

    C.    A term of supervised release of not more than one year (18 U.S.C. § 3583(b)(3)). The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release.

The defendant understands that the penalties for the offense charged in Count Three of

the Information are:

    A.    A maximum prison term of twenty years (18 U.S.C. § 545)

    B.    A maximum fine of $250,000, or in the alternative not more than the greater of twice the gross gain or twice the gross loss (18 U.S.C. § 3571(b)(3) & (d)); and

    C.    A term of supervised release of not more than five years (18 U.S.C. § 3583(b)(1)). The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already

spent on supervised release

The defendant understands that a mandatory special assessment of $300, $100 for each count of conviction, is due at or before the time of sentencing (18 U.S.C. § 3013(a)(2)(A)). In addition to the other penalties provided by law, the Court may order him to pay restitution to the victim(s) of the offense (18 U.S.C. § 3663 or § 3663A).

5.   <u>Sentencing and Application of the Sentencing Guidelines.</u>

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that he has no right to withdraw from this Plea Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation Office shall:

A.   Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B.   Respond to questions from the Court;

C.   Correct any inaccuracies in the pre-sentence report;

D.   Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory

- 8 -

Sentencing Guidelines that the Court will adopt.

   6. Non-Binding Sentencing Stipulations and Agreements.

   Pursuant to Fed. R. Crim. 11(c)(1)(C), the United States and the defendant stipulate and agree that five years' probation is an appropriate disposition of this case.

   The parties intend the above stipulation to be "binding" under Fed. R. Crim. P. 11(c)(1)(C). By using the word binding the parties mean that if the Court will not accept the plea agreement under Fed. R. Crim. P. 11(c)(3)(A), the plea agreement is null and void and the defendant will be allowed the opportunity to withdraw his guilty pleas.

   The United States and the defendant are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

   7.   Acceptance of Responsibility.

   The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

   A.   Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

   B.   Challenges the United States' offer of proof at any time after the plea is entered;

- 9 -

C.  Denies involvement in the offense;

D.  Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E.  Fails to give complete and accurate information about his financial status to the Probation Office;

F.  Obstructs or attempts to obstruct justice, prior to sentencing;

G.  Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H.  Fails to appear in court as required;

I.  After signing this Plea Agreement, engages in additional criminal conduct; or

J.  Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

8.   Waiver of Trial Rights and Consequences of Plea.

The defendant understands that he has the right to be represented by an attorney at every

stage of the proceeding and, if necessary, one will be appointed to represent him.   The defendant

also understands that he has the right:

- A.   To plead not guilty or to maintain that plea if it has already been made;

- B.   To be tried by a jury and, at that trial, to the assistance of counsel;

- C.   To confront and cross-examine witnesses;

- D.   Not to be compelled to provide testimony that may incriminate him; and

- E.   To compulsory process for the attendance of witnesses to testify in his
defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the

foregoing rights and that upon the Court's acceptance of the his guilty plea, he will not be

entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions

about the offense, and if he answers those questions falsely under oath, on the record, and in the

presence of counsel, his answers will be used against him in a prosecution for perjury or making

false statements.

9.   Acknowledgment of Guilt; Voluntariness of Plea.

The defendant understands and acknowledges that he:

- A.   Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because
he is guilty;

- B.   Is entering into this Plea Agreement without reliance upon any promise or benefit of any
kind except as set forth in this Plea Agreement or revealed to the Court;

- C.   Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

- 11 -

D.  Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E.  Is completely satisfied with the representation and advice received from his undersigned attorney.

10.  Scope of Agreement.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea. The defendant understands such matters are solely within the discretion of the specific non-party government agency involved. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11.  Collateral Consequences.

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

The defendant understands that, if he is not a citizen of the United States, his guilty plea to the charged offense will likely result in him being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible. The defendant also understands that if he is a naturalized citizen, his guilty plea may result in ending his naturalization, which would likely subject him to immigration proceedings and possible removal from the United States. The defendant understands that the immigration consequences

- 12 -

of this plea will be imposed in a separate proceeding before the immigration authorities. The

defendant wants and agrees to plead guilty to the charged offense regardless of any immigration

consequences of this plea, even if this plea will cause his removal from the United States. The

defendant understands that he is bound by his guilty plea regardless of any immigration

consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty

plea and to his sentence based on any immigration consequences, and agrees not to seek to

withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his

guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

12.   Satisfaction of Federal Criminal Liability; Breach.

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal

liability in the District of New Hampshire arising from his participation in the conduct that forms

the basis of the Information in this case. The defendant understands that if, before sentencing, he

violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails

to appear for sentencing, the United States may consider such conduct to be a breach of the Plea

Agreement and may withdraw therefrom.

13.   Forfeiture

The defendant further agrees:

That he will immediately and voluntarily forfeit to the United States his interest, if any, in

any and all assets subject to forfeiture pursuant to 18 U.S.C. § 545, 982(a)(2)(B), and 21 U.S.C.

§ 334, as a result of his guilty plea, including, but not limited to: (A) $19,120.14 in funds from

Citibank Account # ██████████ (B) $2,452.00 in U.S. Currency; (C) $11,090.49 in funds from

Fidelity Bank Account # ██████████ (D) $67,028.22 in funds from Renasant Account # ██████

- 13 -

(E) $21,527.31 in funds from Renasant Account #███████; (F) $108,956.13 in funds from TD

Ameritrade Account #███████; and (G) $19,545.11 in funds from TD Ameritrade Bank

Account #███████;

That the Court may enter an order of forfeiture with respect to (A) through (G) at or

before sentencing;

That he will not contest any civil judicial forfeiture of (H) Land and Buildings located at

1576 Creek Bend Lane, Lawrenceville, GA and (I) Land and Buildings located at 2775 Old

Shackleford Road, Suite 1001, Lawrenceville, GA. *See* Complaint, *United States v. 333 Summit*

*Ridge Road, Lawrenceville, GA,* Civil No. 20-721-LM, ECF No. 1; and

That he will pay the amount of $200,000.00 as a substitute res for (J) Land and Buildings

located at 333 Summit Ridge Drive, Lawrenceville, GA. Payment of the substitute res shall be

due on or before the date of sentencing. Upon payment of the substitute res, the United States

will dismiss (J) from the civil forfeiture action, and file an assented-to motion for an order of

forfeiture for the substitute res of $200,000.00, (H), and (I).

The defendant agrees that he will not submit a claim and/or petition for remission for

assets (A) though (J) on behalf of himself or any other person, and agrees to withdraw any claims

and/or petitions for remission for assets (A) though (J) that have been filed on behalf of himself

or any other person; to take whatever steps are necessary to pass to the United States clear title to

(H) and (I), above, including, without limitation, to assent to a motion for a final order of

forfeiture and to complete any other legal documents required for the transfer of title to the

United States; not to assist any other individual in any effort to falsely contest the forfeiture of

the forfeitable properties (A) through (J); to prevent the transfer, sale, destruction, or loss of the

- 14 -

forfeitable properties to the extent defendant has the ability to do so.

None of the forfeitures set forth in this section shall be deemed to satisfy or offset any fine, restitution, cost of imprisonment, or other penalty imposed upon the defendant, nor shall the forfeitures be used to offset the defendant's tax liability or any other debt owed by the defendant to the United States.

With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (A) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment; (B) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (C) all constitutional, legal, and equitable defenses to the forfeiture of assets (A) through (G), described in paragraph 1, in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment. Defendant acknowledges that the forfeiture of assets (A) through (G) is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

Defendant understands that the forfeiture of assets is part of the sentence that may be imposed in this case.

Defendant agrees to waive and release any and all claims he may have to any property seized by the United States, or any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, whether forfeited or not.

- 15 -

The defendant agrees to hold the United States, its agents, and employees, and any state or local law enforcement agency participating in the investigation and prosecution of this case, harmless from any claims whatsoever in connection with the seizure and forfeiture, as well as the seizure, detention and return of any property in connection with the investigation and prosecution of this case.

The defendant acknowledges that the properties to be forfeited under this section are subject to forfeiture as property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the said violations.

14. Waivers.

A.  Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1.   His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2.   The sentence imposed by the Court if it is consistent with or lower than the stipulations specified in Section 6 of this agreement.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B.  Collateral Review

The defendant understands that he may have the right to challenge his guilty plea and/or

- 16 -

sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255.   By

entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to

collaterally challenge:

1. His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2. The sentence imposed by the Court if it is consistent with or lower than the stipulations specified in Section 6 of this agreement.

The defendant's waiver of his right to collateral review does not operate to waive a

collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on

the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral

review also does not operate to waive a collateral challenge based on new legal principles

enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea

Agreement that have retroactive effect.

C. Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a

representative, to request or receive from any department or agency of the United States any

records pertaining to the investigation or prosecution of the case(s) underlying this Plea

Agreement, including without limitation any records that may be sought under the Freedom of

Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D. Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the

Government pursuant 18 U.S.C. § 3742(b) to pursue an appeal as authorized by law.

- 17 -

15. <u>No Other Promises</u>.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

16. <u>Final Binding Agreement</u>.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

17. <u>Agreement Provisions Not Severable</u>.

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

SCOTT W. MURRAY
United States Attorney

Date: 12/21/2020

By: Georgiana L. MacDonald
Assistant United States Attorney
MA Bar No. 685375
53 Pleasant St., 4th Floor
Concord, NH 03301
Georgiana.macdonald@usdoj.gov

Sarah Hawkins
Special Assistant U.S Attorney

- 18 -

The defendant, George Kuiper, certifies that he has read this 18-page Plea Agreement and that he fully understands and accepts its terms.

Date: 12/17/20

_____
George Kuiper, Defendant

I have read and explained this 18-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: 12/17/20

_____
Colleen Savage, Esquire
Attorney for George Kuiper

Date: 12/17/20

_____
Tony Soto, Esquire
Attorney for George Kuiper

- 19 -

# EXHIBIT 2

# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| United States of America, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 20-cv-721-LM |
| | ) |
| Land and Buildings Located at 333 Summit Ridge Drive, | ) |
| Lawrenceville, GA, with all Appurtenances and | ) |
| Improvements Thereon, Owned by George Kuiper, et al, | ) |
| | ) |
| Defendants *in rem.* | ) |
| | ) |

## STIPULATED SETTLEMENT AGREEMENT

Plaintiff, United States of America, through its undersigned counsel, and George Kuiper, through his counsel, Anthony Sgro, Colleen Savage and Roger Phillips, hereby enter into this settlement agreement for the forfeiture of $200,000.00 as a substitute *res* for defendant *in rem* (1), Land and Buildings Located at 333 Summit Ridge Drive, Lawrenceville, GA, with all Appurtenances and Improvements Thereon, Owned by George Kuiper, and for the forfeiture of defendants *in rem* (2), Land and Buildings Located at 2775 Old Shackleford Road, Suite 1001, Lawrenceville, GA, with all Appurtenances and Improvements Thereon, Owned by Cosmic Sales and Marketing, and (3) Land and Buildings Located at 1576 Creek Bend Lane, Lawrenceville, GA, with all Appurtenances and Improvements Thereon, Owned by George Kuiper.

IT IS THEREFORE STIPULATED AND AGREED by and between the United States of America and George Kuiper that:

(A) Claimant, George Kuiper, agrees to pay the sum of $200,000.00 as a substitute res

for defendant *in rem* (1), 333 Summit Ridge Drive, Lawrenceville, GA. Payment in full shall be made on or before the date of Kuiper's sentencing in the related criminal case, *United States v. George Kuiper*, (CR number TBD). Payment shall be in the form of an official check payable to the United States Marshals Service.

(B) Upon the execution of this agreement and payment in full of the substitute res, the United States will move to substitute $200,000.00 for (1) 333 Summit Ridge Drive, Lawrenceville, GA and to dismiss (1) 333 Summit Ridge Drive, Lawrenceville, GA from the case. The Unite States will concurrently move for an order of forfeiture for defendants *in rem* (1) $200,000.00 as a substitute res for 333 Summit Ridge Drive, Lawrenceville, GA; (2) 2775 Old Shackelford Suite 1001, Lawrenceville, GA; and (3) 1576 Creek Bend Lane, Lawrenceville, GA.

(B) George Kuiper consents to the forfeiture of all of his right, title and interest, if any, in the substitute *res* of $200,000.00, and defendants *in rem* (2) and (3).

(D) George Kuiper shall not seek, through any court proceeding or other process, the return of any of the agreed-upon forfeited property, shall not object to the United States obtaining a Certificate of Reasonable Cause under 28 U.S.C. § 2465, and shall bear their own costs of this proceeding, including attorney's fees, if any.

(E) George Kuiper is forever barred from asserting any claims against the United States, its agents, employees or assigns, including the USMS, and the Food and Drug Administration, including but not limited to any claim that the United States did not have probable cause to forfeit the substitute *res* of $200,000.00, or defendants *in rem* (2) and (3).

(F) This Stipulation and Agreement constitutes the entire agreement between the United States and the claimant, George Kuiper.

2

UNITED STATES OF AMERICA

SCOTT W. MURRAY
United States Attorney

Dated:                              By:

_____
Robert J. Rabuck
Assistant U.S. Attorney
N.H. Bar No. 2087
U.S. Attorney's Office
55 Pleasant Street
Concord, NH 03301-3904
603-225-1552
rob.rabuck@usdoj.gov

Dated:   12/17/20

_____
George Kuiper, Claimant

_____
Anthony P. Sgro, Esq.
NV Bar #3811

Dated:   12/17/20

_____
Colleen N. Savage, Esq.
NV Bar #14947
Counsel for Claimant
SGRO & ROGER
720 S. 7th Street, Third Floor
Las Vegas, NV 89101
702-384-9800
Tsgro@sgroandroger.com
Csavage@sgroandroger.com

Dated:

_____
Roger Phillips, Esq.
Phillips Law Office, PLLC
104 Pleasant Street
Concord, NH 03301
roger@phillipslawoffice.com
603-225-2767

3

# EXHIBIT 3

# EXHIBIT 3

PS3 (12/05-Rev. for PACTS 6/11)                                         George Kuiper, / 0102 1:20CR00158-001

In accordance with Local Rule 57.1, Pretrial Services Reports are made available to Defense Counsel and the Government. The Pretrial Reports are not public record, are not to be reproduced or disclosed to any other party, and shall remain confidential as provided in Title 18 U.S.C. § 3153(c)(1).

## PRETRIAL SERVICES REPORT

| District/Office | Charge(s) (Title, Section, and Description) |
|---|---|
| District Of New Hampshire/Concord | **Count 1:** Title 18 U.S.C. § 371, 18 U.S.C. § 545, 21 U.S.C. § 331(d), 21 U.S.C. § 333(a)(2) - Conspiracy to Smuggle Goods into the United States and to Introduce into Interstate Commerce Unapproved Drugs |
| Judicial Officer | |
| Honorable Paul J. Barbadoro U.S. District Judge | |
| Docket Number (Year – Sequence No. – Def. No.) | |
| 0102 1:20CR00158-001 | |

## DEFENDANT

| Name | Employer/School |
|---|---|
| Kuiper, George | Retired |
| Other Names on Charging Document | |
| None | |
| Proposed Release Address | Employer/School Address |
| 333 Summit Ridge Dr Lawrenceville, GA | N/A |

| At Address Since | Time in Community of Residence | Monthly Income | Time with Employer/School |
|---|---|---|---|
| 01/01/1988 | 32.0 years | $1,550 (SSI) | n/a |

**INTRODUCTION:**

The defendant appears today pursuant to a summons for a waiver of Indictment and plea to an Information hearing on. The defendant was interviewed by U.S. Pretrial Services, in the presence of counsel, and was cooperative throughout the process. The probation officer conducted online inquiries and contacted the defendant's brother, Robert Kuiper, for verification purposes.

**DEFENDANT HISTORY / RESIDENCE / FAMILY TIES:**

The defendant, George Kuiper (age 73), advised he was born to Marissa Isabel Kuiper and Nicholas Kuiper in New York City, NY. The defendant noted that his mother died in 2004 from Alzheimer's, dementia and breast cancer and his father died in 1973 from lung cancer. The defendant reported the following information concerning his siblings: Arthur Kuiper (age 72) lives in Miami and is a retired psychologist for the state; Robert Kuiper (age 63) lives in Miami with his wife and is employed as a building inspector for a private company; Ruth Smith (age 69) lives in Tequesta, CA and is a homemaker; and Paul Kuiper (age 63) lives in Florida and is a retired detective with the Miami Dade County Police Department. The defendant reported no communication with Arthur and Ruth but monthly communication with Robert and Paul Robert. Robert Kuiper verified this information.

The defendant reported that he was raised in Patterson, NJ and lived there until age 15, at which time he moved to Midland Park, NJ. The defendant noted that his parents kicked him out of the house at age 18 and he moved

Page 1

PS3 (12/05-Rev. for PACTS 6/11)                                                    George Kuiper, / 0102 1:20CR00158-001

to Newark, NJ, so he could attend college. According to the defendant, he moved to Florida around 1970 for approximately 5 years then relocated to Colorado. The defendant noted that he moved back and forth between Florida and Colorado numerous times, as a result of his job as a salesperson. The defendant stated that he moved to Georgia around 1986 and rented an apartment for 2 years prior to purchasing the home that he currently lives in, located at 333 Summit Ridge Drive in Lawrenceville, GA. A query of public online property records confirmed that this residence was built in 1972, has 3 bedrooms and 3 bathrooms and is approximately 2,700 square feet. According to the defendant, he purchased the home in 1988 for approximately $110,000 and it is free of firearms and dangerous animals. Robert Kuiper verified this information.

The defendant reported that he studied architecture at Miami Dade Community College around 1969 and took engineering courses at New Jersey Institute of Technology around 1971. According to the defendant, he graduated with a Bachelor's degree in marketing at University of Colorado in 1977. Robert Kuiper verified this information.

The defendant reported the following information concerning his children; Jessie Kuiper (age 35) lives in Los Angeles, CA and is employed as an accountant; and Lianna Kuiper (age 33) lives with her mother in Marietta, GA and is unemployed. The defendant noted that these two children are the product of his former martial relationship with Claudia Marietta (age 57), who the defendant believes is retired and has a medical disability. The defendant reported regular communication with his son but not with his daughter. Robert Kuiper was unable to verify information related to Claudia given that he has not seen her in approximately 20 years.

The defendant advised that he is in possession of a United States passport, but it has been expired for approximately 10 years. The defendant noted that he last traveled outside the country in 2008 when he went on a trip to Columbia. The defendant also reported past travels to Brazil in 1986 and Mexico in 2006. The defendant that he traveled to Brazil numerous times before 1986 to retrieve crystals and bring them back to the United States. Robert Kuiper verified the above information except the defendant's travels to Mexico.

**EMPLOYMENT HISTORY / FINANCIAL RESOURCES:**

**Employment History:**

The defendant stated that he has been retired for the past 16 years and collects Social Security Income (SSI). According to the defendant, he was a sales representative for various vitamin companies from 1983 to 2003 as follows: Key Products, Crystal Star Nutrition, YSK Products, Sunbrella, Life Link and Unique Nutrition. The defendant reportedly earned at least $50,000 (gross) per year during that time period. The defendant also indicated that he was self-employed from 1986 to 1992 selling crystals and earned approximately $20,000 per year. Robert Kuiper verified this information.

**Finances:**

The defendant reported the following monthly expenses: utilities ($300), groceries ($500) and internet ($60). According to the defendant, he is the sole owner of his single-family home which has been mortgage free for 2 years. The defendant noted that he receives $850 in social security income and $700 per month in rental income as a result of renting out one of the bedrooms in his residence. The defendant reported that he has 2 pension accounts, one at Invesco, which has an approximate balance of $80,000 and another at Janus Fund, which has an approximate balance of $120,000. The defendant noted that he is eligible to withdraw funds in both accounts. The defendant reported that he has a checking account (approximate balance of $4,000) and $200 in cash. According to the defendant, he has approximately $8,500 in credit card debt and owes $3,200 in tax arrearage. The defendant indicated that he has a driver's license but does not own his own vehicle. He stated that he is

Page 2

borrowing his daughter's vehicle and typically only leaves the house to go grocery shopping once per week. Robert Kuiper was unable to verify any information related to the defendant's finances.

**HEALTH:**

**Physical Health:**

The defendant noted that he was diagnosed with high blood pressure approximately 10 years ago and has struggled with shortness of breath since that time. The defendant indicated that he met with his primary care physician, Dr. Fernando Iora, based out of Lawrenceville, FL a few months ago who also reiterated concerns for the defendant's high blood pressure; however, the defendant reported that he has not been prescribed any medications to manage this condition. He advised that he pulled a muscle in his leg in or around November 2006 and has had trouble walking ever since. The defendant indicated that he was prescribed an anti-inflammatory medication for approximately 3 days after the incident. According to the defendant, he was also diagnosed with a herniated disk in his back several years ago which results in sporadic leg pain. The defendant noted that he needs surgery, but he does not intend to do this nor is he on any medications for the pain. The defendant reported no other physical health problems. Robert Kuiper verified all information but was unaware that the defendant was diagnosed with high blood pressure. Robert Kuiper also added that the defendant has struggled with hay fever, an allergic reaction to pollen, throughout his life.

**Mental Health:**

The defendant reported he was diagnosed with manic depressive disorder, paranoia, and anxiety around age 20. The defendant noted that he has experimented with various medications over the years but is not currently ingesting anything. He indicated that he recently met with a psychologist, Dr. Emily Garai, based out of Lawrenceville, who referred him to a psychiatrist. The defendant noted that he reached out to make an appointment with the psychiatrist to address his mental health disorders, but has yet to hear back. According to the defendant, he has struggled with suicidal ideations sporadically for many years and indicated that this has worsened over the past year. He noted that he has thought of ways he would plan his suicide, but he was not inclined to discuss those thoughts in detail with this officer. The defendant stated that he was hospitalized around age 23 due to having a mental breakdown as it relates to depression and paranoia. Robert Kuiper verified all the above information with the exception of the defendant's recent appointment with Dr. Emily Garai.

**Substance Abuse:**

The defendant reported that he first experimented with marijuana around age 20. He indicated that he was using it occasionally to sleep in recent years but discontinued several months ago. The defendant also reported that he experimented with a hallucinogen, mescaline, on one occasion around age 20. The defendant reported no other substance abuse or treatment nor does he drink alcohol. He denied participating in any substance use treatment programming. Robert Kuiper verified this information.

**PRIOR RECORD:**

A criminal record check conducted through the National Crime Information Center (NCIC), state, and local records revealed the following arrest history:

| Date of | Agency | Charge | Disposition |
|---|---|---|---|
|  |  |  |  |

PS3 (12/05-Rev. for PACTS 6/11)                                    George Kuiper, / 0102 1:20CR00158-001

| **Arrest** | | | |
|---|---|---|---|
| 02/05/1969 (Age 21) | Essex County (NJ) Superior Court; Case No.: 36177 | 1. Drug Offense 2. Possession of Marijuana | 02/05/1969: Found guilty; 5 years committed to Garden State Rec/Youth Correctional Facility; 2 years parole ineligible; fines. |
| 02/13/1970 (Age 22) | Bergen County (NJ) Superior Court; Case No.: 0235 | Drug Offense | 12/16/1970: No bill. |
| 09/28/1970 (Age 23) | U.S. District Court for the District of NJ; Case No.: Unknown | Sale of Narcotics | 12/11/1970: Found guilty; 1-year term of supervised release (TSR). |
| 09/28/1970 (Age 23) | Bergen County (NJ) Superior Court; Case No.: 27253 | Drug Offense | 09/29/1971: Dismissed. |
| | | | |

**ASSESSMENT OF NONAPPEARANCE:**

There are no known factors indicating the defendant poses a risk of nonappearance.

**ASSESSMENT OF DANGER:**

There are no known factors indicating the defendant poses a risk of danger to the community.

**RECOMMENDATION:**

The defendant does not present a risk of nonappearance or danger to the community; therefore, the probation officer respectfully recommends that the defendant be released on personal recognizance without pretrial services supervision.

| Pretrial Services Officer Jacqulyne Santullo U.S. Probation Officer | Date 1/12/2021 | Time 1300 |
|---|---|---|
| Reviewed By Janice A. Benard, U.S. Probation Officer Specialist | | |

# EXHIBIT 4

# EXHIBIT 4



U.S. Department of Justice

United States Attorney
District of New Hampshire

Federal Building                          603/225-1552
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301

December 18, 2020

Colleen N. Savage, Esq.
Sgro & Roger
720 S. 7th Street, 3rd Floor
Las Vegas, NV 89101

Re:   **United States v. George Kuiper**

    The United States understands that your client, George Kuiper, may wish to cooperate with law enforcement with a goal of providing substantial assistance in the investigation or prosecution of other persons. Pursuant to Section 15 of the Plea Agreement between the United States and George Kuiper, this letter sets forth the terms of any such cooperation.

    If your client provides substantial assistance in the investigation or prosecution of another person who has committed an offense, the United States may file a motion pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) advising the sentencing Court of all relevant facts pertaining to that determination and requesting the Court to sentence your client in light of the factors set forth in § 5K1.1(a)(1)-(5).

    Your client understands that the determination of whether to file such a motion rests solely with the United States. This means that the United States may or may not file a motion under U.S.S.G. § 5K1.1 or 18 U.S.C. § 3553(e). The decision whether to file such a motion will depend on the United States' evaluation of any assistance provided by your client, including whether your client has provided truthful, accurate and complete information and/or testimony. Should the United States elect to file such a motion, the sentencing recommendation in the motion will modify and replace any stipulation or agreement to recommend a sentence or sentencing range contained in Section 6 of the Plea Agreement. Your client also understands that even if such a motion is filed, the Court is under no obligation to grant or act favorably upon the motion. It is understood that the sentence to be imposed on your client remains within the discretion of the sentencing Court.

Provided your client gives truthful, accurate and complete information, the United States agrees that, pursuant to U.S.S.G. § 1B1.8(a), any self-incriminating information provided by your client which was not known by the United States, or which the United States could not establish by a preponderance of the evidence at the time of your client's briefings, shall not be used in determining the advisory guideline range. This letter agreement is subject to the § 1B1.8(b) exceptions and reserves to the government the ability to make derivative use of your client's statements.

Sincerely,

SCOTT W. MURRAY
United States Attorney

Date:   December 18, 2020         By:   /s/ Georgiana L. MacDonald
                                        Georgiana L. MacDonald
                                        Assistant U. S. Attorney


The defendant, George Kuiper, certifies that he has read this cooperation letter and that he fully understands and accepts the terms thereof.

Date:   12/29/2        _____
                        George Kuiper, Defendant


I have read and explained this cooperation letter to my client, George Kuiper, and he has advised me that he understands and accepts its terms.

Date:   12/29/2020      _____
                        Colleen N. Savage, Esq.
                        Attorney for George Kuiper

# EXHIBIT 5

EXHIBIT 5

RECEIVED 03/25/2021 04:30PM 7026654120 Document 15 SGRO ROGER 05/17/21   Page 43 of 45

26-Mar-2021  00:31    From Giles Galahad. Phone #9159295721                    FaxZero.com                    p.2

Character Reference,  George Kuiper

To whom it may concern:

I have known George Kuiper for over 35 years.  I am aware of his current legal problem, which I view as totally non-representative of his character.

He has always been hard working and honest, both in his personal life and in business.   He has lived a frugal lifestyle, utilizing any financial gains only to raise his children, and provide gifts of clothing to many less fortunate than himself.

I have always found him to be patient, persistent, energetic, sincere, and cooperative.

March 23, 2021

Giles Galahad

Gustavo Martin

███████████

March 26, 2021

To whom it may concern:

It is with great pleasure that I recommend George Kuiper. I have known him since I was 5 years old, now I'm 46.

George has always displayed a high degree of integrity, responsibility, and friendship. He acts as a guide and advisor in times when It was very necessary for me. From more than 40 years he has been a consequent family friend, bringing always good vibes for everyone when visited us.

As I told him personally a few days ago, he has a special place in my childhood memories and my heart.

Sincerely,

Gustavo Martin
Clinical Psychologist & Senior Consultant

Tamala Ringrose

Date: April 6, 2021

To Whom This May Concern,

My name is Tamala Ringrose, and I offer my letter of character recommendation of George Kuiper to whom I have personally known for 18 years as his Daughter's Best Friend.

During my time with George Kuiper I have experienced an individual who is a stand-up Father. Someone who works hard, carries themselves as a good citizen, who is respectable, polite, and kind. He wakes up early and does his gardening. He is deeply passionate in the care for his animals. George has never posed as a threat to harm anyone and is quite lovely to talk to. In addition, George Kuiper is a family-person who has always presented themselves with poise, optimism, and drive.

It is with my great confidence and pleasure that I recommend George Kuiper as someone who, I truly believe, possesses the character and judgment for the betterment of his community and his family.

Please do not hesitate to contact me if you should require any further information.


Sincerely,

Tamala Ringrose